# United States District Court
# Northern District of Indiana
# Hammond Division

| | |
|---|---|
| MARY PENTONY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 2:09-CV-363 JVB |
| | ) |
| VALPARAISO DEPARTMENT OF | ) |
| PARKS AND RECREATION and | ) |
| LEATHERS AND ASSOCIATES INC., | ) |
| formerly operating as ROBERT S. | ) |
| LEATHERS AND ASSOCIATES, | ) |
| | ) |
| Defendants. | ) |

# OPINION AND ORDER

This matter is before the Court on the motion of Leathers and Associates for summary judgement (DE 42). After reviewing the parties' summary judgment submissions the Court set the motions for oral argument and gave the parties notice under Federal Rule of Civil Procedure 56(f) that they should discuss the applicability of the statute of repose found in Indiana Code § 32-30-1-5 at oral argument. Defendants both filed supplemental memoranda and Plaintiff filed a response to Valparaiso's supplemental memorandum. The Court heard oral argument on March 6, 2012.

A.  **Background**

Plaintiff Mary Pentony was injured while playing on a slide with her two-year-old grandson at a Valparaiso city park play area called Valplayso. Plaintiff then sued Defendants Valparaiso Department of Parks and Recreation and Leathers and Associates Inc. for damages

resulting from the alleged negligent design, construction, and maintenance of the play area. Leathers asserts, and Pentony does not dispute, that the law of the state of Indiana, the location of the injury, applies to her claims in this diversity action.

### B. Summary Judgment Standard

A motion for summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Keri v. Bd. of Trust. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *Keri*, 458 F.3d at 628. A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the

matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50 (1986).

**C.    Facts**

The relevant facts assumed to be true for the purpose of ruling on Defendants' motion for summary judgement are:

Defendant Valparaiso began the process of building a play area in Glenrose park in October 1993. In February 1994 it retained Leathers to design the play area. In April 1994 it accepted Leathers's proposal for architect's services with respect to the project. Leathers agreed to prepare schematic design studies, consult with the playground committee to incorporate design changes requested by the committee, prepare working drawings and specifications, provide organizing and coordinating assistance, and recommend construction consultants. Actual construction of the play area, which was performed by volunteers, occurred from October 5 through October 9, 1994. Leathers issued a certificate of substantial completion for the project on October 10, 1994. It does not appear from the record that Leathers supplied any of the materials or components for the play area. The proposal Leathers submitted establishes that Leathers's responsibility for the project ended with the issuance of the certificate of substantial completion.

Pentony submitted pictures of the play area as part of her brief in response to Valparaiso's supplemental memorandum. (DE 84, 8–11) The pictures show a large, multilevel structure that is secured to the ground.

On June 23, 2008, Pentony was playing on the slide that is part of the play area when her

3

hand became lodged between a pole and the wooden slats on the slide, causing the injuries for which she seeks damages in this suit. She filed her complaint on October 29, 2009.

**C.     Analysis**

**(1)     *Product Liability Statute of Limitations***

Leathers initially maintained that Pentony's claims are barred by Indiana Code § 34-20-3-1, the statute of limitations applicable to product liability actions. A product liability action is an action that is brought against a manufacturer or seller of a product on account of physical harm, regardless of the substantive theory on which the action is brought. Ind. Code § 34-6-2-115. Indiana Code § 34-20-3-1 provides that a product liability action must be commenced within two years after the cause of action accrues or within ten years after the delivery of the product to the initial user or consumer.[1] Pentony filed suit on October 29, 2009, more than fifteen years after the play area was completed. Thus this action is time-barred if Indiana Code § 34-20-3-1 applies.

Plaintiff contends that this is not a product liability action because Leathers provided Valparaiso with a service, not a product. Indiana Code § 34-6-2-114 defines a product as "any item or good that is personalty at the time it is conveyed by the seller to another party" and excludes from the definition a transaction that, by its nature, involves wholly or predominantly the sale of a service rather than a product.

Leathers has variously argued that the product involved here is the slide or a playground

---

[1] The statute has been interpreted to require that an action must be brought within two years after it accrues, but in any event within ten years after the product is first delivered to the initial user or consumer, with certain exceptions not relevant to the instant case. *See Dague v. Piper Aircraft Corp.*, 418 N.E.2d 207, 210 (Ind. 1981).

4

kit or the designs and plans for construction of the play area. However, at oral argument Leathers asserted that the design specifications and drawings for the play area constitute the product.

The Indiana Supreme Court considers the following factors in determining whether a transaction is predominantly for a product or for services: 1) the language of the contract; 2) the circumstances of the parties and the primary reason they entered into the contract; 3) the final product the purchaser bargained to receive, and whether it may be described as a good or a service; and 4) the costs involved, and whether the purchaser was charged only for goods or a price based on both goods and services. *Insul-Mark Midwest Inc. v. Modern Materials Inc.*, 612 N.E.2d 550, 555 (Ind. 1993).

After considering these factors, the Court concludes that the transaction between Valparaiso and Leathers involved predominantly the sale of services rather than a product. Leathers' proposal for the project describes the "architect's services" it would perform:

> BASIC SERVICES
>
> The Basic Services consist of the four phases described below.
>
> SCHEMATIC DESIGN
>
> A representative of Leathers & Associates shall consult with the committee to ascertain the requirements of the project and shall confirm such requirements to the committee. The firm shall prepare schematic design studies, consisting of drawings and other documents illustrating the scale and relationship of project components for approval by the committee.
>
> DESIGN DEVELOPMENT/CONSTRUCTION DOCUMENTS PHASE
>
> Design Development

> The designer shall review and consult with the committee on the schematic design and shall incorporate equipment and design changes requested by the committee. Leathers & Associates shall refine and change the schematic design to meet all safety and accessability guidelines and to fit site and utility requirements. Individual details, traffic flow and budget constraints shall be considered.
>
> Construction Documents
>
> The designer shall prepare from the developed design, for approval by the committee, the working drawings and specifications setting forth the requirements for the construction of the entire project.
>
> Leathers & Associates shall assist the committee in filing the required documents for the approval of governmental authorities having jurisdiction over the project. . . .

(DE 42-1, 10, Valparaiso Mot. Summ. J., Ex. 4 to Ex. A.) The quoted language indicates that the parties considered the contract as one for design services rather than the purchase of a set of blueprints. Viewing the contract as a whole, the Court concludes the services involved in developing the drawings predominate. The physical production of custom designed drawings for the play area is incidental to the service aspect of the transaction. Accordingly, Indiana Code § 34-20-3-1 does not bar Plaintiff's claims against Leathers.

**(2)** *Statute of Limitations for Improvements to Real Property*

Indiana Code § 32-30-1-5(d) provides:

An action to recover damages, whether based upon contract, tort, nuisance, or another legal remedy, for:

(1) a deficiency or an alleged deficiency in the design, planning, supervision, construction, or observation of construction of an improvement to real property;

(2) an injury to real or personal property arising out of a deficiency; or

(3) an injury or wrongful death of a person arising out of a deficiency;

6

may not be brought against a designer or possessor unless the action is commenced within the earlier of ten (10) years after the date of substantial completion of the improvement or twelve (12) years after the completion and submission of plans and specification to the owner if the action is for a deficiency in the design of the improvement.

Indiana Code § 32-30-1-5(a)(1) defines "designer" as one who "designs, plans, supervises, ro observes the construction of an improvement to real property."

The undisputed evidence is that Valparaiso accepted Leathers's plans and specifications in April 1994. Plaintiff filed her suit on October 29, 2009, more than twelve years after Leathers submitted the plans and specifications to Valparaiso and more than ten years after substantial completion of the play area. Accordingly, Plaintiff's claims against Leathers are time barred if the play area constitutes an improvement to real property under Indiana Code § 32-30-1-5.

The Court has found no Indiana cases defining the term "improvement to real property" as used in Indiana Code § 32-30-1-5. However, the Supreme Courts of Wisconsin and Minnesota have developed the following common sense definition in interpreting similar statutes:

> [A] permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable.

*Kohn v. Darlington Comm. Sch.*, 698 N.W.2d 794, 801 (Wis. 2005); *Siewert v. N. States Power Co.*, 793 N.W. 2d 272 (Minn. 2011). The Court concludes that the Indiana Supreme Court would likely adopt a similar definition.

In deciding that bleachers at a high school football field are a permanent addition to real property, the court in *Kohn* looked at the size of the structure, whether it had ever been taken apart or moved, and whether it was ever intended to be taken apart or moved. In that regard the

7

court looked at how long the structure had remained in place. This Court would also consider whether the structure is affixed to the real estate more or less permanently and whether it was custom built for the specific site or mass produced.

Under this definition, the play area on which Pentony was injured is an improvement to real property. It is a sizeable, custom designed structure that is affixed to the real property. It has remained in place for almost eighteen years. The Valparaiso Parks and Recreation Foundation expended money for the plans and materials to build it while volunteers invested labor. It unquestionably makes the real property on which it sits more useful. Accordingly, Indiana Code §32-30-1-5 bars Pentony's claims against Leathers.

**D.    Conclusion**

For the foregoing reasons, the Court GRANTS Leathers's motion for summary judgment (DE 42).

SO ORDERED on March 29, 2012.

s/ Joseph S. Van Bokkelen  
Joseph S. Van Bokkelen  
United States District Judge