# United States District Court
# Northern District of Indiana
# Hammond Division

| | | |
|---|---|---|
| MARY PENTONY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:09-CV-363 JVB |
| | ) | |
| VALPARAISO DEPARTMENT OF | ) | |
| PARKS AND RECREATION and | ) | |
| LEATHERS AND ASSOCIATES INC., | ) | |
| formerly operating as ROBERT S. | ) | |
| LEATHERS AND ASSOCIATES, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This matter is before the Court on the motion of Defendant Valparaiso Department of Parks and Recreation for summary judgment (DE 51). After reviewing the parties' summary judgment submissions the Court set the motions for oral argument and gave the parties notice under Federal Rule of Civil Procedure 56(f) that they should discuss the applicability of the statute of repose found in Indiana Code § 32-30-1-5 at oral argument. Defendants both filed supplemental memoranda and Plaintiff filed a response to Valparaiso's supplemental memorandum. The Court heard oral argument on March 6, 2012.

**A.     Background**

Plaintiff Mary Pentony was injured while playing on a slide with her two-year-old grandson at a Valparaiso city park play area called Valplayso. Pentony then sued Defendants Valparaiso Department of Parks and Recreation and Leathers and Associates Inc. for damages

resulting from the alleged negligent design, construction, and maintenance of the play area. In Count I of the complaint Pentony alleges a premises liability claim against Valparaiso, stating that it allowed dangerous conditions to exist at the premises, failed to establish and enforce safe rules for the play area, and that it failed to warn invitees of dangerous conditions there. In Count II Pentony alleges that Valparaiso, as the builder and installer of the slide, breached its duty to properly construct, maintain and repair the slide. In Count III she alleges that Valparaiso breached its duty to design a playground that was fit for use, to make design improvements, to discover and correct defects, and to warn users of the playground.

**B.   Summary Judgment Standard**

A motion for summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists.

*Keri v. Bd. of Trust. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *Keri*, 458 F.3d at 628. A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50 (1986).

**C.     Facts**

The relevant facts assumed to be true for the purpose of ruling on Defendants' motion for summary judgement are:

Defendant Valparaiso began the process of building a play area in Glenrose park in October 1993. In February 1994 it retained Leathers to design the play area. In April 1994 it accepted Leathers' proposal for architect's services with respect to the project. Leathers agreed to prepare schematic design studies, consult with the playground committee to incorporate design changes requested by the committee, prepare working drawings and specifications, provide organizing and coordinating assistance, and recommend construction consultants. Actual construction of the play area, which was performed by volunteers, occurred from October 5 through October 9, 1994. Leathers issued a certificate of substantial completion for the project on October 10, 1994.

On June 23, 2008, Pentony was playing on the slide that is part of the play area when her hand became lodged between a pole and the wooden slats on the slide, causing the injuries for

which she seeks damages in this suit. She filed her complaint on October 29, 2009.

Valparaiso routinely conducts maintenance inspections at the Valplayso playground, including visual walk-throughs. It uses incident report forms to address equipment problems. It maintains logs of all repairs that are made to the equipment.

According to Pentony's expert, Scott Burton, the play area was designed for children ages five through twelve, and a sign should have been placed on the playground equipment warning that the equipment was suitable only for persons within that age range. He states that the failure to have a warning sign in place is a violation of specified national safety standards.

**C.     Discussion**

**(1)**   *Product Liability Statute of Limitations*

Valparaiso initially claimed that the ten-year statute of repose under Indiana's Product Liability Act, Indiana Code § 34-20-3-1, bars Pentony's duty-to-warn claim in Count I as well as her claims in Counts II and III of the complaint. A product liability action is an action that is brought against a manufacturer or seller of a product on account of physical harm, regardless of the substantive theory on which the action is brought. Ind. Code § 34-6-2-115. Indiana Code § 34-20-3-1 provides that a product liability action must be commenced within two years after the cause of action accrues or within ten years after the delivery of the product to the initial user or consumer.[1] Pentony filed suit on October 29, 2009, more than fifteen years after the play area was completed. Thus this action is time-barred if Indiana Code § 34-20-3-1 applies.

---

[1] The statute has been interpreted to require that an action must be brought within two years after it accrues, but in any event within ten years after the product is first delivered to the initial user or consumer, with certain exceptions not relevant to the instant case. *See Dague v. Piper Aircraft Corp.*, 418 N.E.2d 207, 210 (Ind. 1981).

4

The Court determines that Indiana Code § 34-20-3-1 is not applicable to this action, because Valparaiso is not a manufacturer as defined in Indiana Code § 34-6-2-77 or a seller as defined in Indiana Code § 34-6-2-114.

Indiana Code § 34-6-2-77 defines manufacturer:

(a) "Manufacturer," for purposes of IC 34-20, means a person or an entity who designs, assembles, fabricates, produces, constructs or otherwise prepares a product or a component part of a product before the sale of the product to a user or consumer.

Valparaiso may have had a hand in the design of the play area and did construct it. However, these activities did not precede the sale of the play area to anyone.

Indiana Code § 34-6-2-136 defines seller:

"Seller," for purposes of IC 34-20, means a person engaged in the business of selling or leasing a product for resale, use, or consumption.

Nothing in the record suggests that Valparaiso is in the business of selling play areas.

As Valparaiso conceded at oral argument, because Valparaiso is neither the manufacturer nor the seller of a product, the statute of repose found in Indiana Code § 34-20-3-1 does not apply to Pentony's claims against Valparaiso.

**(2)** *Statute of Limitations for Improvements to Real Property*

Indiana Code § 32-30-1-5(d) provides:

An action to recover damages, whether based upon contract, tort, nuisance, or another legal remedy, for:

(1) a deficiency or an alleged deficiency in the design, planning, supervision, construction, or observation of construction of an improvement to real property;

(2) an injury to real or personal property arising out of a deficiency; or

5

(3) an injury or wrongful death of a person arising out of a deficiency;

may not be brought against a designer or possessor unless the action is commenced within the earlier of ten (10) years after the date of substantial completion of the improvement or twelve (12) years after the completion and submission of plans and specification to the owner if the action is for a deficiency in the design of the improvement.

Indiana Code § 32-30-1-5(b) defines "possessor" as one having "ownership, possession, or control of real property at the time an alleged deficiency in an improvement to the real property causes injury."

Indiana Code § 32-30-1-5(c) excludes from the definition of "deficiency" the failure of "a possessor to use reasonable care to maintain an improvement to real property following a substantial completion of an improvement."

The undisputed evidence is that the play area on which Plaintiff was injured was substantially completed on October 10, 1994. Plaintiff filed her suit on October 29, 2009, more than ten years after substantial completion of the play area. Accordingly, Plaintiff's claims against Valparaiso that do not constitute claims of failure to maintain the play area are time barred if the play area constitutes an improvement to real property under Indiana Code § 32-30-1-5.

The Court has found no Indiana cases defining the term "improvement to real property" as used in Indiana Code § 32-30-1-5. However, the supreme courts of Wisconsin and Minnesota have developed the following common sense definition in interpreting similar statutes:

> [A] permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable.

*Kohn v. Darlington Comm. Sch.*, 698 N.W.2d 794, 801 (Wis. 2005); *Siewert v. N. States Power*

*Co.*, 793 N.W. 2d 272 (Minn. 2011). The Court concludes that the Indiana Supreme Court would likely adopt a similar definition.

In deciding that bleachers at a high school football field are a permanent addition to real property, the court in *Kohn* looked at the size of the structure, whether it had ever been taken apart or moved, and whether it was ever intended to be taken apart or moved. In that regard the court looked at how long the structure had remained in place. This Court would also consider whether the structure is affixed to the real estate more or less permanently and whether it was custom built for the specific site or mass produced.

Under this definition, the play area on which Pentony was injured is an improvement to real property. It is a sizeable, custom designed structure that is affixed to the ground. It has remained in place for almost eighteen years. The Valparaiso Parks and Recreation Foundation expended money for the plans and materials to build it while volunteers invested labor. It unquestionably makes the real property on which it sits more useful. Accordingly, Indiana Code §32-30-1-5(d) bars Pentony's claims against Valparaiso that are not claims for failure to maintain the play area.

**(3)**  *Count I Claims*

Valparaiso asserts that the evidence it designated regarding its routine maintenance inspections negates any liability on its part regarding Pentony's claims in Count I that Valparaiso breached its duties as the owner of the premises where she was injured. Pentony counters that Valparaiso's failure to comply with national safety standards raises a genuine issue of fact. The Court agrees with Pentony that her expert's opinion on the need for a warning as to the

appropriate age limits for use of the play area creates a genuine issue for trial.

Valparaiso also urges that the failure to post the age-limit warning is a design issue rather than a maintenance issue, so that this claim too is barred by Indiana Code § 32-30-1-5(d). The Court disagrees. The only case Valparaiso cites regarding whether a failure to warn is a design or a maintenance issue is *Perdue v. Greater Lafayette Health Services, Inc.*, 951 N.E.2d 235 (Ind. Ct. App. 2011). In that case the court held that the duty to warn of a dangerous condition (an uneven place in the concrete floor of a parking garage that was part of the design of the structure) was an ongoing duty, distinct from any duty with regard to the design and construction of the premises. *Id.* at 240.

Valparaiso argues that the case is distinguishable because in *Perdue* the cause of the plaintiff's injury was a latent condition of the premises whereas in the instant case Plaintiff alleges that the absence of the warning itself caused her injuries. While the cases are factually different, the Court reads *Perdue* broadly to stand for the proposition that the duty to warn is an ongoing duty of maintenance rather than a design issue. The Court sees no reason to differentiate between a warning as to a latent defect and a warning as to the appropriate age range for use of the premises. Accordingly, Indiana Code § 32-30-1-5(c) excludes Plaintiff's failure to warn claim from the operation of the statute of repose found in § 32-30-1-5(d).

## D.     Conclusion

The Court GRANTS Valparaiso's motion for summary judgment (DE 51) in part and DENIES it in part. The motion is granted with respect to all claims for any deficiency in the design, planning, or construction of the play area on which Plaintiff was injured. The motion is

denied with respect to Plaintiff's claims concerning failure to maintain the play area, including any failure to warn as to the appropriate age range for use of the play area.

SO ORDERED on March 29, 2012.

s/ Joseph S. Van Bokkelen
Joseph S. Van Bokkelen
United States District Judge